UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MADISON BRENGLE,

    Plaintiff,

v.                                                              Case No. 8:18-cv-1812-02-AAS

ITF LIMITED a/k/a
INTERNATIONAL TENNIS FEDERATION,
INTERNATIONAL DOPING TESTS AND
MANAGEMENT AB, STUART MILLER, AND
JOHN SNOWBALL,

    Defendants.
_____/

# ORDER

This cause is before the Court on the Motion to Dismiss Amended Complaint filed by defendants, ITF Limited, also known as International Tennis Federation ("ITF"); International Doping Tests & Management AB IDTM ("IDTM"); Stuart Miller ("Miller") and John Snowball ("Snowball") (Dkt. 8).[1] In their motion, Defendants move to dismiss the amended complaint for forum non conveniens, based upon a forum selection clause providing for disputes to be heard in the courts of England. Defendants also move to dismiss on the ground of forum non conveniens generally, and for lack of personal jurisdiction over each of them.

---

[1] Claims against another defendant, WTA Tour, Inc., were severed, and stayed pending arbitration, in Case No. 8:18-cv-1126 and are not before the Court in this case.

The Court also has before it the Plaintiff's response in opposition, at docket 11, along with the declarations and other supporting materials filed by the parties together with their respective submissions. The Court concludes that this complaint is a "dispute relating to" the ITF's anti-doping program. Accordingly, the forum selection clause agreed to by Plaintiff provides for exclusive jurisdiction in English courts. The motion to dismiss is granted on this ground.

**Plaintiff's Allegations and the Amended Complaint**

Plaintiff Madison Brengle, a resident of Bradenton, Florida, has been a professional tennis player on the WTA (Women's Tennis Association) Tour since 2007. WTA is the governing body for women's professional tennis. The WTA's rule book mandates that the ITF's anti-doping program governs participation in all WTA-sanctioned events and is binding on all players. Defendant ITF is the world governing body for the sport of tennis. ITF is a Bahamas company with its principal place of business in London, England. Defendant IDTM is a Swedish company with its principal place of business in Stockholm. ITF contracts with IDTM to collect blood and samples from participating athletes in tournaments around the world. Defendants Miller and Snowball reside in England. (Dkt. 1-2, Am. Compl., ¶¶ 2, 20-25). Miller is

ITF's anti-doping manager/supervisor and Snowball is doping control officer at IDTM. *Id.*

As a participant on the WTA Tour, Plaintiff is required to agree, and has agreed, to abide by the "Tennis Anti-Doping Programme." The anti-doping program is found in this record at docket 8-1, Exhibit 4. Among other things, the program requires players to provide blood samples upon demand.

Article 1.8 of the anti-doping program provides:

> Subject to Article 1.7, this Programme is governed by and shall be construed in accordance with English law. Strictly without prejudice to the arbitration provisions of Articles 8 and 12 of the Programme, disputes relating to the Programme shall be subject to the exclusive jurisdiction of the English courts.

(Dkt. 8-1, 8-2, Miller Decl., Exs. 4-6). The arbitration provisions of Articles 8 and 12 do not apply to Plaintiff's claims in this case. Plaintiff's agreement to be bound by the anti-doping program is in this record. (Dkt. 1-2, Am. Compl. ¶¶ 43-47; Dkt. 8-1, 8-2, Miller Decl., ¶¶ 5-7, Exs. 1-3, 7).

Plaintiff alleges that she suffers from a rare medical condition known as Complex Regional Pain Syndrome (CRPS) Type I. CRPS is manifested by chronic pain, which usually affects a person's arm or leg. Plaintiff's CRPS is induced by venipuncture (i.e., the process of obtaining intravenous access to

blood through a person's vein). Plaintiff alleges that Defendants required her, as part of the program, to undergo venipuncture on multiple occasions (at Wimbledon twice; in Australia; at U.S. Open) before she advised ITF of her formal CRPS diagnosis in November 2016. Plaintiff alleges that she suffered physical injury, emotional trauma, and lost income as a result. (Dkt. 1-2, Am. Compl., ¶¶ 3-6, 10-12, 50-94).

On August 11, 2017, after an independent medical exam and additional correspondence, ITF notified Plaintiff that she would be conditionally exempt from blood testing under the program for a period of one year. Plaintiff alleges two additional incidents in connection with the program after the ITF notification. (Dkt. 1-2, Am. Compl., ¶¶ 12-16, 100-120, 126-130, 133-143).

Plaintiff asserts the following claims, noting as a preamble to her claims that Defendants have bullied, harassed, and punished her for her challenge to the venipuncture procedures which impaired her medical condition. Each of these counts relates to conduct under the anti-doping program:

> Count 1 – Battery against ITF and IDTM (based upon the venipuncture performed on plaintiff under the program);
>
> Count 2 – Intentional Infliction of Emotional Distress against all defendants (based upon the venipuncture and two program-related incidents in 2018);

Count 3 – Negligence against all Defendants (based upon failure adequately to protect the welfare and safety of athletes including plaintiff by requiring her to undergo venipuncture under the program, and based upon failure adequately to train and supervise employees and other representatives who administer venipuncture under the program);

Count 4 – Breach of Contract against ITF (for failure to perform its obligations under the program to protect plaintiff);

Count 5 – Breach of the Implied Covenant of Good Faith and Fair Dealing against ITF (based upon its obligations under the program to protect plaintiff); and

Count 6 – "Permanent Injunction" against all Defendants (seeking additional remedy of permanent injunctive relief based upon the conduct described in the Amended Complaint).

## Defendants' Motion to Dismiss

Defendants have moved to dismiss the complaint (1) for forum non conveniens based upon the forum selection clause, (2) in the alternative, for forum non conveniens generally, and (3) for lack of personal jurisdiction. In support of their motion, Defendants have submitted declarations of Miller, at docket 8-1, Snowball, at 8-4, and IDTM's Managing Director Erik Johannesson,

at 8-3. Plaintiff opposes the motion and has submitted declarations by herself, at docket 11-1, and by her attorney, at 11-2, in connection with her opposition.

## Forum Selection Clause

The Court concludes that the forum selection clause, cited above, controls. Although Defendants move to dismiss for personal jurisdiction and general forum non conveniens, those issues need not be reached.

No venipuncture occurred in Florida. Rather, Plaintiff underwent venipuncture in connection with the program on a total of four occasions, each outside of Florida: at Wimbledon in London, England in either 2009 or 2010; at the Australian Open in January 2016; at Wimbledon in July 2016; and at the U.S. Open in New York in August 2016. Plaintiff alleges that she suffered physical injuries on each of these occasions. Plaintiff also alleges that she suffered further symptoms after her return to Florida. (Dkt. 1-2, Am. Compl. ¶¶ 51-53, 57-62, 74, 79-80, 90, 94).

## Legal Analysis Under Forum Selection Clause

Defendants' motion to dismiss based upon the forum selection clause contained in Article 1.8 of the program is properly addressed under the doctrine of forum non conveniens, although the analysis is somewhat truncated where the parties have already agreed upon a forum. *Atlantic Marine Constr. Co. v.*

*United States Dist. Court,* 571 U.S. 49, 60-61 (2013). The court has discretion to consider a forum non conveniens motion before addressing issues of personal or subject-matter jurisdiction, when warranted for purposes of convenience, fairness, or judicial economy. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 432 (2007).

In *Atlantic Marine,* the Supreme Court explained that enforcing forum selection clauses "protects [the parties'] legitimate expectations and furthers vital interests of the justice system" and thus that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." 571 U.S. at 63. Plaintiff Brengle's case is not one of "the most exceptional cases."

Forum selection clauses "are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir. 2009). The Eleventh Circuit has recognized four grounds for finding such a clause unenforceable: (a) if the clause was induced by fraud or overreaching; (b) if the plaintiff would be deprived of her day in court because of inconvenience or unfairness; (c) if the chosen law would deprive the plaintiff of a remedy; and (d) if enforcement of the clause

would violate public policy. *E.g., Feggestad v. Kerzner Int'l Bahamas Ltd.,* 843 F.3d 915, 918 (11th Cir. 2016); *Krenkel,* 579 F.3d at 1281.

Where an enforceable clause exists, the important policy considerations underlying enforcement of forum selection clauses require that the traditional forum non conveniens analysis must be adjusted as follows:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. ...
>
> Second, [the court] should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. ...
>
> As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.

*Atlantic Marine,* 571 U.S. at 63-64.

As an initial matter, Plaintiff contends that her tort claims (although not her breach-of-contract claims) fall outside the scope of the forum selection clause. Plaintiff argues that the clause is rendered ambiguous because the program itself does not expressly address torts committed by the parties and because the forum selection clause does not contain the words "any" or "all." Because the clause is ambiguous, Plaintiff contends, it should be construed against the drafter and in favor of Plaintiff.

However, the Court finds that Plaintiff's claims fall squarely within the scope of the forum selection clause, which provides that "disputes relating to the Programme shall be subject to the exclusive jurisdiction of the English courts." The use of the mandatory "shall", together with the reference to the English courts' exclusive jurisdiction, make it plain that disputes must be brought in England if they relate to the program. Nor is there any doubt that Plaintiff's claims relate to the program. Two of Plaintiff's claims assert that the anti-doping program is a contract between Plaintiff and ITF, and seek damages for its breach. All of Plaintiff's remaining claims are expressly addressed to the conduct of Defendants in carrying out the provisions of the program. The Amended Complaint repeatedly references the anti-doping program as the subject-matter of the dispute, e.g., ¶¶ 5-9, 36-48; alleges that Plaintiff has been

subjected to "an Unrelenting Course of Inappropriate and Tortious Conduct in Connection with" the program, at page 12; alleges that the program "is a valid, binding and enforceable contract between Brengle and ITF," which Plaintiff claims has been breached, at ¶¶ 168, 170, 182; and alleges harm based upon venipuncture conducted pursuant to the program. (*E.g.,* ¶¶ 144, 147, 161-162, 186). Similarly, the claims against each of the Defendants are expressly based upon the Defendants' roles in administering the program.

Plaintiff also contends that the forum selection clause is unenforceable because it is procedurally and substantively unconscionable. Plaintiff argues that the clause is procedurally unconscionable because it is contained in the forms that are required of all tennis players who wish to compete in ITF's covered events, including WTA Tour events. However, the Eleventh Circuit has repeatedly held that a forum selection clause contained in a contracting party's standard form agreement does not result in overreaching so long as the clause is "reasonably communicated" to the other party. *E.g., Feggestad,* 843 F.3d at 918; *Krenkel,* 579 F.3d at 1281. Here, the forum-selection clause is clearly stated in Article 1.8 on page 2 of the program. The language of the clause is plain and it is in the same type and font size as the other Articles of the program. Plaintiff agreed each year, in multiple documents, to comply with the

terms of the program, and she was repeatedly reminded that a copy was posted on the Internet (with the link provided) as well as being available from the ITF. (Dkt. 8-1, Exs. 1-4). Under these circumstances, the forum selection clause was amply communicated to Plaintiff and was not procedurally unconscionable. *See, e.g., Feggestad,* 843 F.3d at 919 (hotel reservation email with hyperlink to terms and conditions held sufficient); *Krenkel,* 579 F.3d at 1281-82 (clause contained in one-page form signed during hotel check-in was sufficient); *Crandell v. Kerzner Int'l Bahamas, Ltd.,* Case No. 15-20221-CIV-MARTINEZ-GOODMAN, at docket 38, at 3 (S.D. Fla. July 27, 2017) (email confirmation with link to terms and conditions was sufficient).

Plaintiff argues that the forum selection clause is substantively unconscionable because it requires disputes to be heard in the jurisdiction where ITF is headquartered, and that "ITF has substantially more time and resources than Plaintiff to focus on litigation", while "Plaintiff has to train and travel year-round to tournaments in order to be able to support herself." These arguments, however, do not establish unconscionability. The fact that a forum selection clause requires individuals to litigate against a corporation in the corporation's chosen jurisdiction does not, by itself, amount to inconvenience or unfairness sufficient to invalidate the clause (*i.e.,* inconvenience or unfairness that would

deprive plaintiff of her day in court). *See, e.g., Feggestad,* 843 F.3d at 920 n.3 (plaintiffs in such a case had not demonstrated inconvenience or unfairness); *Krenkel,* 579 F.3d at 1282 n.4 (same). Moreover, the facts of this case confirm that the clause calling for litigation in England is eminently reasonable. Plaintiff is a professional tennis player on an international level, who is suing, in part, over events that took place during her participation in two different Wimbledon competitions in England. There is no unfairness in holding her to her agreement to litigate any disputes in England: a jurisdiction to which she travels to compete in tournaments; in which a large portion of the disputed events occurred; which provides the governing law for the program pursuant to Article 1.8; and which represents a centralized location in which disputes arising worldwide in connection with the program may be adjudicated.

Because Plaintiff is bound by the forum selection clause, the Court applies the modified forum non conveniens analysis described by the Supreme Court in *Atlantic Marine.* Plaintiff bears the burden of showing that requiring litigation in the bargained-for forum is unwarranted; private interest factors are deemed to weigh entirely in favor of the agreed-upon forum; and the Court is limited to consideration of arguments about public interest factors. *Atlantic Marine*, 571 U.S. at 63-64. Here, Plaintiff has failed to make any significant

showing with respect to the public interest factors. A "forum clause should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 15 (1972). Accordingly, the forum selection clause must be enforced.

That Plaintiff asserts some claims in tort makes no difference. Plaintiff's three tort claims are for battery, intentional infliction of emotional distress, and negligence. Accepting Plaintiff's well-pleaded factual allegations as true, none of Plaintiff's allegations is sufficient to show the commission of one of these torts within Florida.

**Battery**: Plaintiff has not alleged a battery within Florida. "A battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *E.g., Paul v. Holbrook,* 696 So.2d 1311, 1312 (Fla. 5th DCA 1997). No such contact (nor the accompanying intent) is alleged to have occurred within Florida; rather, Plaintiff alleges in Count I, ¶ 147, that the battery occurred "in performing the venipuncture test on Brengle." It is undisputed that such venipuncture occurred only in England, Australia, and New York.

Although Plaintiff alleges that she suffered continuing or further injury as a result of the venipunctures after her return to Florida, such continuing or

further injury is insufficient to constitute personal injury in Florida. *E.g., Hinkle v. Continental Motors, Inc.,* 268 F.Supp.3d 1312, 1326 (M.D. Fla. 2017).

**Intentional Infliction of Emotional Distress**: Plaintiff has also not alleged an intentional infliction of emotional distress in Florida. To state a claim, Plaintiff must allege "1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff; and 4) [that] the conduct caused the severe emotional distress." *R.W. v. Armor Correctional Health Services, Inc.,* 830 F. Supp.2d 1295, 1304 (M.D. Fla. 2011). Such a claim exists where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life Ins. Co. v. McCarson,* 467 So.2d 277, 278-79 (Fla. 1985). "The question of whether conduct rises to the level of outrageousness is a question for the trial court to determine as a matter of law." *Latson v. Hartford Ins.,* 2006 WL 485097 at *3 (M.D. Fla. Feb. 28, 2006).

Without condoning the conduct alleged by Plaintiff in this case, none of that conduct rises to the extreme standard required by *Metropolitan Life. See,*

14

*e.g., Armor Correctional Health,* 830 F. Supp.2d at 1304; *Latson,* 2006 WL 485097 at *3-4 (collecting cases). In any case, the conduct alleged to have occurred *within Florida* (an abandoned attempt at taking a blood sample on February 15, 2018) falls well short of the mark.

**Negligence**: Finally, Plaintiff's negligence claim is based upon her being forced to undergo venipuncture, all of which occurred outside of Florida. (Dkt. 1-2, Am. Compl. ¶¶ 161-62). Even if her negligence claim could somehow be read more broadly, the sole conduct in Florida, and the sole "injury" in Florida, that could be the subject of the claim is the February 15, 2018 quickly-abandoned notification that a blood sample would be collected, which Plaintiff alleges caused her "significant anxiety and mental suffering." (Dkt. 1-2, Am. Compl. ¶ 130). However, Plaintiff has alleged neither a physical impact nor circumstances that would permit her to avoid Florida's "impact rule" with respect to emotional distress. *See, e.g., Thomas v. City of Palm Coast,* 2015 WL 7429051 at *3 (M.D. Fla. Nov. 23, 2015); *Sylvester v. GE Capital Retail Bank,* 2012 WL 3522691 at *4 (M.D. Fla. Aug. 14, 2012); *Armor Correctional Health,* 830 F.Supp.2d at 1303-04. Thus, no tort of negligence within Florida has been alleged.

As noted above, Plaintiff has not asserted any injuries being inflicted within Florida -- only injuries due to venipunctures conducted in England, Australia and New York (with continuing or further symptoms upon her return to Florida) and non-compensable emotional distress in Florida due to the February 15, 2018 doping control officer visit. Thus, Plaintiff's claims do not arise from conduct in Florida.

Besides a lack of Florida connection, this issue requires the parties to step back objectively and consider the public interest factors as required by *Atlantic Marine*. Plaintiff plays international tennis, all over the world. Her opponents come from all over the world. Anti-doping regulations are of *absolute paramount* importance. Such a program must be uniformly enforced. To ignore the forum selection clause would be to permit the women's tennis anti-doping regimen to be litigated anywhere. The current top-twelve ranked women tennis players in the world hale from eleven separate countries. (WTA rankings 10/23/18). Such a world-wide anti-doping regimen must be enforced with a central authoritative agency to have controlling legitimacy worldwide. The anti-doping program cannot be effective if it is litigated in the United States, Holland, Czech Republic, Japan, Belarus, and wherever a player might be aggrieved. If the anti-doping officials can be haled into court in Tampa to

litigate the program, there is no reason they cannot be haled into court in Minsk, or Bucharest. Uniform authoritative enforcement would soon fall apart. This very strong public interest in worldwide tennis anti-doping integrity, and simple common sense, require a uniformly enforced forum selection clause. And no litigant in America could contend that the courts and laws of England (the source of our own legal DNA) are not legitimate.

A further public interest consideration is that Plaintiff contractually agreed that the anti-doping program "is governed by and shall be construed in accordance with English law." (Dkt. 8-1, at 5, Exs. 4, 5, 6 at Articles 1.7 and 1.8). Thus it appears English substantive law and English choice of law rules would apply to all or part of this lawsuit. As such, "[t]he Court 'would be forced to rely on expert testimony and evidence provided by the parties as to the substance of [English] law, which would add to the administrative burden of having trial in this forum." *Crandell, supra*, at *9.

In dismissing this case for forum non conveniens based upon the forum selection clause, the Court notes that defendants have stipulated to the following in connection with their motion:

> For the avoidance of doubt, each of Defendants consents to the jurisdiction of the English courts with respect to the claims asserted by Plaintiff in this case, and, in the

17

> event that this motion is granted, each of Defendants further waives the running of any applicable statute of limitation during the time period commencing with Plaintiff's filing of this lawsuit and ending 180 days after the Court's order granting this motion.

(Dkt. 8, at 12 n. 17). The dismissal is conditioned upon Defendants' compliance with their stipulation quoted above, which stipulation is made part of this order.

**ACCORDINGLY**, it is **ORDERED AND ADJUDGED** as follows:

1. The case is dismissed pursuant to the forum selection clause. The Court finds that each of the Defendants consents to the jurisdiction of the English courts with respect to the claims asserted by Plaintiff in this case, and, each of Defendants has waived the running of any applicable statute of limitations during the time period commencing with Plaintiff's filing this lawsuit and ending 180 days after the date of this Order.

3. The Clerk is directed to close the file.

**DONE AND ORDERED** in Tampa, Florida, on October 24, 2018.

*s/William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**